Good morning, your honors. John Heenan on behalf of the defendant and appellant, Russell Moddison. As the court's aware, Mr. Moddison appealed whether it was a violation of his due process and confrontation clause rights when the government, in its case in chief, called a marshal to the stand who testified that a confidential informant had told him that Mr. Moddison possessed a particular make and model of firearm. The government has graciously conceded that it was a confrontation clause violation, the testimony that they elicited. As the court's aware, the burden then shifts to the government to prove beyond a reasonable doubt to this court that that constitutional violation was harmless. Let me just get right to the issue here for me. That firearm could have belonged either to Moddison or Vasquez. Why doesn't the circumstantial evidence, since there was no admission here, such as the proximity of the gun to the defendant Vasquez was nowhere around the gun. And the ammunition suggests that if there was error, that it was simply harmless. Yes, Your Honor. That certainly when we conceded at trial, and I'll certainly concede to this Court, that the government proved beyond a reasonable doubt, beyond any doubt, that the gun was either Moddison's or Vasquez's. Both of them were wanted. Both of them fled on foot. What's absent from the record and what was absent at trial was how long Vasquez and Moddison were running around in these backyards before they were apprehended. It was a short time, but no one knows how short. With that said, there was no fingerprint. The gun was located about 15 feet from where Moddison was hiding, so it was in close proximity. I thought it was found under the bush from which someone emerged who was a man. I think he – Moddison was under the bush. And so was the gun. That's not my understanding, Your Honor. I think the gun was 10 to 15 feet away. I thought it was 10 or 15 feet from where they ultimately found him, but that from – it was under the bush that he was under, if it was him under the bush. It was in some landscaping. I don't know that that was the exact record. I know that he was apprehended 10 to 15 feet away from this gun, which was partially very – He was apprehended there, but the gun made him wrong. But my understanding is that he was – the gun was under the bush and a person emerged from the bush. I don't think – One of the officers said, I saw the person and it was a man. I don't think, and I sure could be wrong, Your Honor, but I don't think what was elicited at trial was this particular bush was exactly where they found the gun. I think the closest the government got was 10 to 15 feet. Our big point at trial and my point now in front of this Court is we have two people running around for an unknown amount of time, and the government couldn't prove that Vasquez was not in the backyard. She was apprehended a short time later in the yard over in the front yard of the neighboring house, and they couldn't account for where Vasquez was or wasn't in the course of this on-foot flight. And so with that said, our concerns that we expressed at trial, and that were frankly cured only with the admission of this confidential informant statement that it was Modison's gun and not Vasquez's, was there was no fingerprint analysis. A skip trace was performed on the gun. They located the owner of the gun, and he was never interviewed or called to testify. No one ever testified at trial saying the gun was Modison's. Vasquez was never called to testify. And I think most critically what's not in the record is any temporal within one minute we had these people apprehended or within 30 seconds. No one knows, and it's not in the record. How about the ammunition? Does that make any difference? I don't think so, Your Honor. We know that there was ammunition in the trunk. How about the backpack? And there was a backpack with men's clothing. And ammunition in it. And ammunition in the backpack. And that ammunition fit the gun, didn't it? Nine-millimeter ammunition that fit the gun, yes, Your Honor. And there were only two people who could have owned the gun. There were only two people that could have owned the gun, correct. And the 15 feet, 10 to 15 feet, assuming those are the facts, was a direct route from the bush to the point at which he was apprehended, wasn't it? Yes. My point at trial and my point now is, was Vasquez under the bush 30 seconds before the marshals entered the backyard? I don't know. And that was the reasonable doubt that we expressed to the jury at trial. And I think that but for the marshal saying, oh, yeah, here's some real good direct evidence because an informant told me that it was Modison's gun and he was the one that was in possession of it, that was the only direct evidence in the trial. Now, I'm not going to – certainly not going to be cute with the Court. I've now found in the record why I think that it was under the bush. It says, let's see, we looked underneath on page 4041 of the record. It says, we looked underneath the bush where he'd been. Is this where you were looking? Yes. I got underneath the tree and started looking and could see the weapon, very shiny silver color, a little bit of it coming between the pieces of beauty bark. So let's assume that's true. Why would that change your argument? It makes it stronger circumstantial evidence, Your Honor, if the gun's right under his foot as opposed to 10 feet away. Bush, not foot. Bush. Correct. But assuming it were the bush that Modison were under, yeah, I mean, that puts the gun closer to him. But it doesn't put it in his hands. It puts it pretty darn close. I believe that the police officers testified they found it under some bark, not under the bush. Some bark. My understanding is it's bark under the bush. Bark under the bush. All right. Let me ask you a question. How would you distinguish this case from United States v. Nielsen, where, again, we had circumstantial evidence, but still it was sufficient for conviction? Well, I think, Your Honor, Nielsen's distinguishable. One, there was an interesting fact in Nielsen that makes it distinguishable, where the argument was did the defendant have possession of this safe? There was some. And the hearsay testimony from the girlfriend of the defendant was that it wasn't her safe. She didn't have access to the safe. The defendant did. They found some videotapes in that safe that had the defendant and a woman other than the girlfriend on them, which was pretty strong circumstantial evidence that the defendant had access to that safe. This court looked at possession and indirect possession of drugs and concluded that because the defendant resided in the home, it didn't matter as much. Here it's possession of a firearm. We think the government's burden is to put it in the defendant's hands, prove that he was the one that possessed it, and that's the distinction that I would see. I think this case is more similar to, and I'm going to apologize, U.S. v. Nigen, N-G-U-Y-E-N, which is a decision from this court from this year, 565 F. 3rd, 668. And I think that case is particularly important because there was a hearsay statement. It was the best evidence of the defendant's guilt. This court concluded that that hearsay confrontation clause violation was not harmless and the fact that a limiting instruction had been given there as here was insufficient to cure the violation. Did you cite that case in your brief? I did not, Your Honor. Have you filed a 28-J letter? I have not, Your Honor. And that is, we can't be – I assume that when you talk about it and haven't cited it in your briefs, you would inform the court of the case. Please do so afterwards. I will. My apologies, Your Honor. Okay. Your time's about up if you want to reserve any of it. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Ed Zink. I was trial counsel and I represent the government on this appeal. I think the Court has pinned in on the precise issue. Under the harmless error analysis, which it's our position this was harmless error beyond a reasonable doubt, you look at four factors under the Bowman case, the importance of the evidence that is the challenge testimony, whether that evidence was cumulative or out on an island by itself, the presence of corroborative evidence in the government's case-in-chief or the absence of corroborative evidence, and then finally, the overall strength of the government's case. Frankly, the government's case here was overwhelming. And, Your Honor, I think you both of you got right to the point that, first of all, there was no evidence that put Ms. Vasquez in the same backyard as where this firearm was found. And there's no ambivalence or ambiguity in the record as to where the firearm was found and where Mr. Modison was found. Well, where was it found? Was it found under the bush or not under the bush? It was found at Mr. Modison's feet where he was hiding. And what happened exactly, and you're right on the record at 341 in the ER, Marshall Keyes came over the fence, looked into the backyard, and saw Mr. Modison on his haunches basically kneeling down in a bush. He yelled out. Well, he saw – I mean, what I've got out of the record is he saw a person doing that, and he saw the feet of a person. Correct. And the only indication I can find in a quick read that this person was Mr. Modison, as opposed to Ms. Vasquez, is that at some point he said it was a man. That was his testimony. But when he yelled his name, the man, who was in fact Modison, turned, got up and bolted and ran. Marshall Keyes ran around the other side of the shed, and they basically met about 10 to 15 feet away from where he saw the person kneeling. After they fought with him and got him in handcuffs and in custody, they then walked back to the bush, which at its base had beauty bark. So you're both kind of correct. It's a bush planted in beauty bark. And they looked there down on the ground and saw this firearm partially covered in the bark. And so if there's confusion, what happened was they saw him at the base of the bush in the bark. They called out his name. He ran, only made it about 10 to 15 feet away before he was apprehended. As for Ms. Vasquez's presence in the yard, she was never in the yard as far as the record is concerned. Mr. Heenan asked every single witness on cross-examination at the trial whether they thought it was possible for Ms. Vasquez to have been there. And not a single witness would agree with that. They all felt like, even though they couldn't pin down the time precisely, they all agreed that they were there quickly enough. They would have seen her. I have a question, which I always want to ask the government in these cases. Then why did you put on the CI evidence, which obviously had a confrontation clause problem? Or did you just create an appeal issue and take up our time and your time? And I've wasted a lot of your time and my time and Mr. Heenan's time, and for that I regret it. I wish I had a good answer. In the heat of the moment at trial, sometimes you do foolish things. Frankly, this is a first for me. I'm not in the practice of committing trial error, and I regret it very much. But it was my mistake, Your Honor. You know, one of the things, now that we're on this point, one of these days a court's going to rule that the error can't be harmless. Can't be harmless if the government introduced it, because the government knew that the rules, and in spite of the rules, it introduced it. And maybe the government did it thinking that a court will always find an harmless error, so we have nothing to lose. We can sit still or we can go ahead, because the court's going to find it harmless and you make that decision and you introduce it. And one of these days a ruling is going to come out that it can't be harmless if the – if it's based on some constitutional violation that the government had to be aware of and yet the government proceeded. Do you see what I'm saying? I very clearly see what you're saying. Well, put another way. I mean, the way I tend to look at it is you must have had a reason to put it on. You must have thought you needed it, so how can you stand up now and say it's harmless? I understand, and in this case you have a very strong argument that it is harmless, but nonetheless, obviously, at the other end, you thought you needed it for some reason. Well, I accept your apology. You're being a first time. But what happened, what Judge Ferris was describing, happened in the Sixth Circuit case of Hughes v. Hearn, where they found it not harmless. But thank you for your apology, and I assume it's a lesson well learned. It is, Your Honor. And I can distinguish the Hearn case. Unlike Modison's prosecution, the Hearn evidence, the challenged evidence, was that the source said Mr. Hearn was taking drugs to Nashville to a rave party to sell them. The charge was possession of drugs with intent to distribute. The defense presented credible evidence in that prosecution that Mr. Hearn, his roommate, actually had access to the vehicle where the drugs were found. So the evidence went to the heart of the issue on intent. And for that reason, the Court found that it was really the only evidence on the intent and, therefore, was highly prejudicial. And under the Bowman factors that this Circuit uses, reversal was required in that case. Mr. Modison's case, although I screwed this one up, Your Honors, it was not a case with the intent of sliding one by, by any stretch. I must have thought it was necessary at that moment. But I never returned to that evidence. I knew I had made a mistake, and it was never mentioned again, and I certainly didn't touch on it in closing argument. And if you look at some of the other cases that the defense cites in his brief, the prosecutors took advantage of the constitutional dilemmas that they placed the defendants in. I did not do that in this case. I recognize that I had run right up to that line and I backed away from it and stayed away from it. I don't know if that satisfies Your Honor, because I hear what you're saying. I understand that point. And I think the record substantiates the argument you make that it was not referred to in closing. In this case, there simply is no evidence in the record that puts Ms. Vasquez anywhere near that gun. It's at Modison's feet. He made one last effort to get away from it. He got about 10 to 15 feet before he was tackled. And Ms. Vasquez was found on the far side of a completely different house, walking. She wasn't trying to run away. And when she looked across the street, according to Sergeant Hafner, and saw his police car, she knew the gig was up and she just kind of sat down in animated fashion and threw a backpack on the ground. Additionally, there is a backpack in the car, which is Modison's girlfriend's vehicle, which the jury could very easily infer he has access to. And in that backpack is a man's clothing and ammunition of precisely the same  So that's pretty weak if we were looking for beyond a reasonable doubt. There are many explanations for why a man's clothing and something that didn't belong to the man could be in the same place. So that really is – if we were looking – if that was it and we were looking beyond a reasonable doubt, we'd have a big problem. Fair point. But that's not it. He was caught with the gun at his feet. He tried to get a few feet away and he didn't make it very far. It would be a different situation, I think, if the firearm had been found in the vehicle with three people. Then I think this case would be much more analogous to some of the cases cited by the defendant. And then the government would have been in a position, perhaps, of needing to call the source, which is something we did not want to do.  I don't think there are any further questions. Thank you, Your Honor. I said we'll give you a minute, Your Honor. I guess just to respond to one point from the prosecutor, I hope that nothing's implied in the briefing that we submitted, and I certainly don't – I don't think there was any bad faith or malicious intent by this prosecutor. He's a very fine prosecutor. I work with him often. I think just the cat got let out of the bag. And it was pretty damning testimony. It was the first witness. And from that point, I knew things weren't looking good. But it would have been helpful if you knew the record a little better when you came up here. Okay. Thank you. Thank you, Your Honor. The case of United States v. Ferguson is submitted. We will go on to United States v. Dompier. Yes. Okay. We will go out to United States v. Dompier. And we will take a break after the next case, just so you can –
judges: Farris, Nelson D. W., Berzon